# THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE NON-PARTY DEPOSITION SUBPOENA ) ) ) | |
| AUTO-ISAC, INC. c/o Booz Allen Hamilton, Inc. 901 15th Street, N.W. Washington, D.C.  20005 ) ) ) ) Movant. | Case No. 1:2016-mc-02034 |

IN RE NON-PARTY DEPOSITION
SUBPOENA                                    )
                                           )
                                           )    Case No. 1:2016-mc-02034
AUTO-ISAC, INC.                            )
c/o Booz Allen Hamilton, Inc.              )
901 15th Street, N.W.                      )
Washington, D.C.  20005                    )
                         Movant.           )
                                           )
                                           )
BRIAN FLYNN, Belleville, IL;               )
GEORGE and KELLY BROWN,                    )
Pacific, MO; and                           )
MICHAEL KEITH, Montague, MI                )
                                           )
                   Plaintiffs,             )    United States District Court,
         v.                                )    Southern District of Illinois,
                                           )    C.A. No. 3:15-cv-00855
FCA U.S. LLC f/k/a CHRYSLER GROUP          )
LLC, Auburn Hills, MI and                  )
HARMAN INTERNATIONAL                       )
INDUSTRIES, INC., Stamford, CT             )
                                           )
                   Defendants.             )
                                           )

# NON-PARTY AUTO-ISAC, INC.'S REPLY IN SUPPORT OF MOTION TO QUASH THIRD-PARTY SUBPOENA

## INTRODUCTION

Non-Party Auto-ISAC, Inc. ("the Auto-ISAC") has moved this Court for an order, pursuant to Rule 45 and Rule 26(c) of the Federal Rules of Civil Procedure ("FRCP"), quashing a subpoena ("the Subpoena") directing the Auto-ISAC to produce documents in a litigation that predates the Auto-ISAC's existence.  The Subpoena requests irrelevant material, much of which can be retrieved from other less burdensome sources—whether it be publicly available or

available from another party in the above-captioned litigation pending in the United States District Court for the Southern District of Illinois ("the Underlying Action"). Of even greater moment than the Subpoena's inability to yield relevant information, is the unnecessary societal harm that enforcement would establish as a precedent.

According to the National Highway Traffic Safety Administration ("NHTSA"), the Auto-ISAC is a "crucial component of the cybersecurity posture of modern vehicles" that "provides a critical path for the automotive industry to proactively prepare for and respond to cyber threats, vulnerabilities, and incidents." Letter from NHTSA Chief Counsel, at 1 (Oct. 20, 2016) (attached as Appendix A). NHTSA and the Secretary of Transportation have publicly voiced strong support for the Auto-ISAC and highlighted the importance of facilitating the collection and dissemination of cyber threat information. Only the Auto-ISAC can fulfill this mission and confidentiality is essential to its success. In demanding the disclosure of "highly confidential information to third parties," the Subpoena threatens to "seriously undermine the Auto-ISAC and jeopardize the vitally important research and collaboration essential to identifying potential risks with safety-critical applications." App'x A at 2. "[I]f an ISAC came to be viewed as 'one stop shopping' for information about members of a particular industry, it is highly likely that those constituents would limit or end their participation in the voluntary information-sharing efforts of that ISAC." Letter from Counsel for the Board of Directors of the NH-ISAC, at 7 (Oct. 21, 2016) (attached as Appendix B).

The burden on the Auto-ISAC—whose animating purpose is directly threatened by this forced disclosure of irrelevant and confidential information—and the ensuing burden on public safety should not be underestimated. Plaintiffs have styled their action as one to correct deficiencies in automotive cybersecurity, when in fact, their Subpoena could significantly

impede the cooperation and open exchange of ideas and information that are vital to that very endeavor.  NHTSA has stated that any action that "comprise[s] or dilute[s] the Auto-ISAC's ability to promote [] critical information sharing . . . [is] contrary to the public interest."  The Subpoena poses that very threat and should be quashed accordingly.

## ARGUMENT

### I.      Legal Standard For Quashing A Third-Party Subpoena

The Auto-ISAC bears the burden of proof in moving to quash the Subpoena.  *See, e.g.*, *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005); *Myers v. Atl. Health Sys.*, No. CV 13-4712 (JMV), 2016 WL 819619, at *1 (D.N.J. Mar. 2, 2016). But as described in greater detail below, it satisfies this "heavy burden."  *See Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403 (D.C. Cir. 1984).   Therefore this Court should quash this overbroad, irrelevant, and burdensome discovery tactic.

Federal Rule of Civil Procedure 45 governs the Subpoena issued in this action, and it *requires* a court to quash a subpoena if it "subjects a person to undue burden." Fed. R. Civ. P. 45(d).  *See, e.g.*, *In re Micron Tech*, 264 F.R.D. at 9 (quoting *Watts v. S.E.C.*, 482 F.3d 501, 508 (D.C. Cir. 2007) ("'[Rule 45] requires that district courts quash subpoenas that . . . would cause an undue burden.'").  The Rule's concern with burden is paramount: "[t]he text of Rule 45 makes quite clear that parties and attorneys who issue subpoenas have an affirmative duty to prevent undue burden or expense to the persons subject to the subpoena."  *Millennium TGA, Inc. v. Comcast Cable Commc'ns LLC*, 286 F.R.D. 8, 11 (D.D.C. 2012).  Rule 45 also permits a court to quash a subpoena that would effectuate disclosure of "a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d).

Rule 26 imposes additional obligations on those who seek discovery from third parties.

All discovery sought under Rule 45 must satisfy the relevance and proportionality requirements articulated in Rule 26(b).  *See, e.g.*, *Coleman v. District of Columbia*, 275 F.R.D. 33, 36 (D.D.C. 2011) ("No requirement of relevance is included in the text of Rule 45; however, it is settled that a subpoena is limited in scope by Rule 26(b)(1) of the Federal Rules of Civil Procedure."); *In re Motion to Compel Compliance with Subpoena Direct to Dep't of Veterans Affairs*, 257 F.R.D. 12, 18 (D.D.C. 2009) ("[I]n assessing whether a burden is undue under Rule 45, the court should look to the standards articulated in Rule 26(b)(2) of the Federal Rules of Civil Procedure."). Specifically, the relevance requirement demands that discovery be limited to "nonprivileged matter[s] that [are] relevant to any party's claim or defense."  Fed. R. Civ. P. 26.   The proportionality requirement states that discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  *Id.*

Special considerations apply when the object of a subpoena is a stranger to the underlying litigation.  Courts carefully consider the potential burden placed on bystanders with no role or stake in an underlying lawsuit.  *See, e.g.*, *Millenium TGA*, 286 F.R.D. at 11.  In *Watts v. S.E.C.*, the court stated that "[t]he Rule 45 'undue burden' standard requires district courts supervising discovery to be generally sensitive to the costs imposed on third parties."  *Watts*, 482 F.3d at 509.  Indeed, status as a non-party to the underlying litigation has been recognized by numerous courts as an important factor in determining the existence of an undue burden and the appropriate scope of discovery.[1]

---

[1] *See e.g.*, *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) ("[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the

## II.     The Subpoena Should Be Quashed Because It Seeks Information That Is Irrelevant To Plaintiffs' Action

The threshold inquiry in assessing the legitimacy of a subpoena is confirming its ability to yield information that is relevant to the underlying litigation.[2]  Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).  "[A] showing of relevance can be viewed as a showing of *need*; for the purpose of prosecuting or defending a specific pending civil action, one is presumed to have no need of a matter not relevant to the subject matter involved in the pending action."  *Coleman*, 275 F.R.D. at 36 (internal quotation marks omitted) (emphasis added).  Although "relevance is to be broadly construed," this standard "is not so liberal as to allow a party to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so."  *Id.* at 37 (internal quotation marks omitted).  Discovery is "not an open-ended invitation to subject a party to *irrelevant*, unduly burdensome, or otherwise improper discovery requests." *Andrades v. Holder*, 286 F.R.D.

---

balance of competing needs."); *Misc. Docket Matter No. 1 v. Misc. Docket Matter No. 2*, 197 F.3d 922, 927 (8th Cir. 1999) (quoting *Cusumano*); *Dart Indus. Co. Inc. v. Westwood Chem. Co., Inc.*, 649 F.2d 646, 649 (9th Cir. 1980) ("While discovery is a valuable right and should not be unnecessarily restricted . . . the 'necessary' restriction may be broader when a nonparty is the target of discovery.") (citation omitted); *Millennium TGA*, 286 F.R.D. at 11 ("[C]ourts have the discretion to limit discovery to prevent undue expense to third parties, even if the discovery sought is within the permissible scope of Rule 45 and Rule 26."); *Precourt v. Fairbank Reconstruction Corp.*, 280 F.R.D. 462, 467 (D.S.D. 2011) ("When a nonparty is subpoenaed, the court is particularly mindful of Rule 45's undue burden and expense cautions.").

[2] "Although irrelevance is not among the litany of enumerated reasons for quashing a subpoena found in Rule 45, courts have incorporated relevance as a factor when determining motions to quash a subpoena." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005).  A court "may quash a subpoena duces tecum as overbroad if it 'does not limit the [documents] requested to those containing subject matter relevant to the underlying action.'" *Singletary v. Sterling Transp. Co. Inc.*, 289 F.R.D. 237, 241 (E.D. Va. 2012) (quoting *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 612 (E.D. Va. 2008)). "A subpoena imposes an undue burden on a party when a subpoena is overbroad."  *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d at 612.

64, 66 (D.D.C. 2012) (emphasis added).  Plaintiffs must demonstrate that the material they seek is relevant to the specific claims they have made, a showing they have failed to make.

### A. The FCA Communications Are Not And Cannot Be Relevant To The Underlying Action

The Auto-ISAC's argument opposing Plaintiffs' request for communications with FCA from June 2010 to the present is neither "confusing" nor "incorrect."  *See* Opp. at 11.  It is, in fact, quite simple. The Subpoena seeks all communications between FCA and the Auto-ISAC from June 2010 until the present.  The Auto-ISAC did not exist for the vast majority of this time period.  There could not have been any such communications until the Auto-ISAC was officially incorporated on August 17, 2015—thirteen days *after* Plaintiffs filed suit in the Underlying Action.  Thus, Plaintiffs' request for all communications between FCA and the Auto-ISAC from June 2010 to August 17, 2015, is necessarily irrelevant.  No such communications exist. However, even if they did, Plaintiffs' request for *every* communication over a five year period is overbroad.

Plaintiffs claim that subpoenas should only be quashed in "extraordinary circumstances," *Flanagan v. Wyndham Int'l Inc.,* 231 F.R.D. 98, 102 (D.D.C. 2005), but such circumstances exist when the subpoena request is so broad as to encompass information well beyond that related to the underlying litigation.  *See e.g.*, *Andrades*, 286 F.R.D. at 66 (subpoena requesting all of a non-party's emails, including those "created, deleted, sent or received," was "excessively broad and improper"); *Singletary*, 289 F.R.D. at 241 (finding non-party subpoenas that requested a plaintiff's "entire employment file . . . overly broad on their face").  Plaintiffs' Subpoena requesting *all* of the Auto-ISAC's communications with FCA is facially overbroad.  There is no attempt to establish a limiting principle to cabin this request to a relevant time frame or to the issues covered under the scope of discovery in the Underlying Action.  *See, e.g.*, *Theofel v.*

*Farey-Jones*, 359 F.3d 1066, 1071 (9th Cir. 2004) ("One might have thought, then, that the subpoena would request only e-mail related to the subject matter of the litigation, or maybe messages sent during some relevant time period, or at the very least those sent to or from employees in some way connected to the litigation.").   Thus, Plaintiffs' request for communications with FCA from June 2010 to the present is overbroad and irrelevant.

Moreover, even if read more narrowly to request only communications between FCA and the Auto-ISAC from August 17, 2015, to the present, the Subpoena still requests information that is irrelevant to Plaintiffs' underlying claims.  Such communications would have taken place after all the alleged conduct that forms the basis of Plaintiffs' suit.  The Auto-ISAC did not exist during any relevant time period covered by the complaint.  The fact that a subpoena requests information arising after the contested events at issue in the underlying litigation have taken place can be a factor in determining that a non-party subpoena is overbroad and imposes an undue burden.  In *WM High Yield v. O'Hanlon*, a subpoenaed non-party's only nexus to the litigation was its relationship with a former-party that did not even commence until *after* the contested activity in the underlying litigation occurred.  *WM High Yield v. O'Hanlon*, 460 F. Supp. 2d 891, 896 (S.D. Ind. 2006).  The court specifically cited this factor in its decision quashing the non-party subpoena.  *Id*. at 896–97.  Similarly here, the Auto-ISAC's relationship with FCA could not have begun until after August, 17, 2015, after the contested activity in Plaintiffs' August 4, 2015 complaint occurred.  There is no reason to believe that post-litigation communications are relevant to alleged conduct by another party prior to the Auto-ISAC's very existence.

To justify Plaintiffs' overbroad request, they speculate that the alleged defects persist and that present-day communications between FCA and the Auto-ISAC could thus be relevant to

their claims.  By Plaintiffs' own admission, FCA's voluntary safety recall that supposedly failed to patch each of the alleged defects took place on July 23, 2015, which also predates the Auto-ISAC's existence.  *See* Amended Compl. ¶ 34.  FCA could not have communicated with the Auto-ISAC about the defects or the safety recall at that time, because the Auto-ISAC did not exist to receive such communications.  The activity subject to Plaintiffs' complaint is activity that took place before August 4, 2015.  Plaintiffs' complaint must be the touchstone against which the Subpoena is judged, and the scope of discovery must be limited to material that could elucidate allegations in that complaint.  *See, e.g.*, *Hardrick v. Legal Servs. Corp.*, 96 F.R.D. 617, 618–19 (D.D.C. 1983) ("[Discovery] should be reasonably related to the circumstances involved in the alleged discrimination and to a time frame involving the alleged discriminatory conduct and the individuals who are allegedly involved in that conduct.").

## B. The Auto-ISAC's Documents Regarding Its "Best Practices" Publication Are Irrelevant

Plaintiffs have requested all "[d]ocuments reviewed, considered, published, or otherwise related to the Auto-ISAC's creation of the automotive cybersecurity 'Best Practices' which was published in the summer of 2016."  That information is irrelevant to Plaintiffs' claims.

*First*, Plaintiffs' request for documents that the Auto-ISAC relied on or considered in the creation of its "Best Practices" publication appears to be nothing more than an attempt to force a non-party to act as an unretained expert.  Rule 45 permits a court to quash a subpoena if it requires "disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party."  This exception was provided to guarantee "appropriate protection for the intellectual property of [a] non-party witness."  *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 814 (9th Cir. 2003) (quoting Fed. R. Civ. P. 45 advisory committee's note to 1991 amendment).  The 1991

amendment note to Rule 45 justified such protection on the ground that "the use of subpoenas to compel the giving of evidence and information by unretained experts" was a "growing problem." Fed. R. Civ. P. 45 advisory committee's note to 1991 amendment.  That problem is clearly illustrated here.

The Auto-ISAC is neither a party nor a retained expert in the Underlying Action.  Yet, Plaintiffs are attempting to capitalize on the Auto-ISAC's knowledge of automotive cybersecurity by requesting the research used to create its independent "Best Practices" publication, information that has no connection to the "specific occurrences in dispute" in the Underlying Action.  Fed. R. Civ. P. 45.  Plaintiffs cannot use the subpoena power and this Court to compel the Auto-ISAC to reveal such information absent a showing of "substantial need" that cannot be met without "undue hardship."  *Id*; *see Friedland*, 2006 WL 2583113, at *3 ("To establish undue hardship, [a] party must show that the substantial equivalent cannot be obtained through other means.") (internal quotation marks omitted).  Plaintiffs have not even attempted to make such a showing.

In *Statutory Comm. of Unsecured Creditors v. Motorola, Inc.*, a party sought reports produced by an independent, unretained expert that the opposing party may have relied upon in creating the business plan at issue in the case.  *Statutory Comm. of Unsecured Creditors v. Motorola, Inc.*, 218 F.R.D. 325, 326–27 (D.D.C. 2003).  The court granted the expert's motion to quash, finding that the reports on general market conditions in a particular industry "fit perfectly within the rule."  *Id.* at 326.  Here the Auto-ISAC's connection to the litigation is even more tenuous.  FCA could not have relied upon the Auto-ISAC's work product and the Auto-ISAC would have no information received from FCA before the lawsuit.  Both limitations derive from the fact that this lawsuit predates the Auto-ISAC's existence.  Furthermore, the Auto-ISAC is a

completely independent body, and Plaintiffs seek its work product and opinion—not factual information relevant to their claims—to establish certain general perspectives on cybersecurity standards.  Such a subpoena impermissibly drafts the Auto-ISAC into Plaintiffs' service without any showing of need.  "In a society where knowledge is so valuable, there is something unfair about the courts permitting their processes, such as the issuance of a subpoena, to destroy that market in order to take for free the product of an individual's diligence, research, and expertise."  *Id.*[3]

*Second*, Plaintiffs have specifically asked that the Auto-ISAC produce documents that are largely publicly available and many of which the Auto-ISAC named in its "Best Practices" publication.  The Court should not force the Auto-ISAC to locate and produce documents that Plaintiffs can obtain themselves.  In *Statutory Comm. of Unsecured Creditors v. Motorola, Inc.*, the court considered it relevant in quashing the subpoena that the expert had "relied upon publicly available information" and that the requesting party could have commissioned similar reports.  *Id.* at 327.  Plaintiffs can hire their own expert to advise them on the relevant best practices in the Underlying Action.  The Auto-ISAC's analysis of the current state of best practices in automotive cybersecurity and the research it gathered to arrive at its views should be protected under Rule 45, both because it represents expert opinion and because Plaintiffs can access the underlying research to arrive at their own conclusions.  Moreover, even the generosity of the relevance standard cannot save this request.  While information is relevant if it "appears to be reasonably calculated to lead to the discovery of admissible evidence," *Phillips & Cohen, LLP*

---

[3] *See also Convolve, Inc. v. Dell, Inc.*, No. C 10-80071 WHA, 2011 WL 1766486, at *2 (N.D. Cal. May 9, 2011) ("The instant subpoena effectively requires non-party Seagate to act as an unpaid expert witness in support of defendants' defense against Convolve in the Texas litigation. This is an abuse of the subpoena power."); *Cf. Young v. United States*, 181 F.R.D. 344, 346 (W.D. Tex. 1997) ("[J]ust because a party wants to make a person work as an expert does not mean that, absent the consent of the person in question, the party generally can do so.").

*v. Thorpe*, 300 F.R.D. 16, 18 (D.D.C. 2013), forcing the Auto-ISAC to disclose publicly available documents will not lead to additional admissible evidence. It leads right back to where this likely began—with Plaintiffs reviewing the Auto-ISAC's cybersecurity "Best Practices" publication and the documents it cites.

*Third*, the Auto-ISAC gathers from Plaintiffs' opposition that the real objective is to identify a supposed cache of "many more" documents that the Auto-ISAC allegedly consulted in developing its "Best Practices" publication. *See* Opp. at 10. However many documents were consulted, neither the named or unnamed documents are likely relevant to Plaintiffs' claims. Specifically, Plaintiffs dissemble when they allege that the Auto-ISAC was formed to address "precisely" the issues in the Underlying Action. After the district court severely narrowed the claims at stake, Plaintiffs' lawsuit concerns the elements of fraudulent concealment, unjust enrichment, and other state consumer protection claims. The Auto-ISAC is a cybersecurity information sharing organization that endeavors "to enhance cyber security awareness and coordination across the global automotive industry."[4] Not only does the Auto-ISAC have nothing to say on the legal claims at issue in the Underlying Action, the information security standards it consulted in developing the "Best Practices" publication have absolutely nothing to do with them. The connection Plaintiffs draw between these technical and managerial cybersecurity documents and their state statutory and common law claims is so tenuous as to fall well outside the bounds of relevance.

*Finally*, the temporal focus of a request for information is also pertinent to determining relevance. In *Hardrick v. Legal Servs. Corp.*, the court denied (with some minimal exceptions) a motion to compel responses to interrogatories where there was "no indication that plaintiff's claim in any way involve[d]" the discovery topics at issue. *Hardrick v. Legal Servs. Corp.*, 96

---

[4] https://www.automotiveisac.com/index.php

F.R.D. 617, 618 (D.D.C. 1983) (requiring defendant to answer limited versions of only three out of thirty interrogatories subject to dispute).   "[D]iscovery should be tailored to the issues involved in the particular case."  *Id.*  Thus, not only does the "Best Practices" publication and the documents reviewed to create it lack relevance to Plaintiffs' claims, but Plaintiffs fail to explain how a "Best Practices" publication developed and released in mid-2016 can be relevant to industry standards predating August 4, 2015.  As Plaintiffs admit, the "world of automotive cybersecurity" is "quickly growing."  *See* Opp. at 9.  If it is necessary to identify relevant cybersecurity standards in 2010-2015, then looking at material developed in 2016 could paint a misleading and irrelevant picture.  Such information is irrelevant to Plaintiffs' claims in August 2015.

## III.    The Subpoena Should Be Quashed Because It Imposes An Undue Burden On Non-Party Auto-ISAC

Plaintiffs' Subpoena requests to non-party Auto-ISAC are duplicative, unnecessary, unwarranted, and affirmatively harmful both to the Auto-ISAC and its members, and to society as a whole.  The requests unduly burden the Auto-ISAC.  The Federal Rules of Civil Procedure require a court to grant a motion to quash when it finds that a subpoena imposes such a burden.  In evaluating whether a given subpoena inflicts an undue burden, courts have considered "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed."  *See Alexander v. F.B.I.*, 186 F.R.D. 21, 34 (D.D.C. 1998) (citation omitted).  The D.C. Circuit also has highlighted the factors set out in Rule 26 as relevant to the undue burden analysis.  They include:

> whether the discovery is unreasonably cumulative or duplicative; whether the discovery sought is obtainable from some other source that is more convenient, less burdensome, or less expensive; and whether the burden or expense of the

12

proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

*Watts*, 482 F.3d at 508 (D.C. Cir. 2007) (quoting Fed. R. Civ. P 26).

None of these factors weigh in favor of forcing the Auto-ISAC to produce the requested documents.

**A. Requesting Documents That Can Be Obtained From A Less Burdensome Source Imposes An Undue Burden**

Rule 26 requires courts to "limit the frequency or extent of discovery" where requested items "can be obtained from some other source that is more convenient, less burdensome, or less expensive." The imperative to identify a "less burdensome" source dovetails with the solicitude that courts have demonstrated toward non-parties in general, discussed above. *See supra* at 3-4. "[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." *Cusumano*, 162 F.3d at 717; *see also O'Hanlon*, 460 F. Supp. 2d at 895–96 ("[N]on-party status is a significant factor a court must consider when assessing undue burden for the purpose of a Rule 45 motion."). In this case, the communications and documents that Plaintiffs have requested from the Auto-ISAC can generally be obtained from such other sources.

For example, Plaintiffs' request for documents reviewed and considered in developing the "Best Practices" publication can be satisfied largely by publicly available documents. The document itself specifically identifies fifteen primary resources on which the Auto-ISAC relied. Moreover, on six separate occasions, it refers to having consulted "established resources" in given areas. It should not be the Auto-ISAC's job to do Plaintiffs' homework on cybersecurity. Plaintiffs can enlist their own expert to identify and consult many of the same public and

"established resources" on cybersecurity best practices, and such an expert can focus on the relevant time period.

Plaintiffs have also requested communications between FCA, a party to the Underlying Action, and the Auto-ISAC, a non-profit, non-party to that litigation. These communications can be more easily, economically, and fairly obtained from Defendant FCA, rather than from the Auto-ISAC.[5] In *Moon v. SCP Pool Corp.*, the district court quashed a third-party subpoena, in part because the requests sought documents held by a party to the litigation. The court found that "the plaintiffs [could] more easily and inexpensively obtain the documents from defendant, rather than from [the] nonparty." *Moon*, 232 F.R.D. at 638. Here, Plaintiffs have made no showing that FCA is unable or unwilling to provide these documents. Courts have determined that such a failure can impose an undue burden on non-parties. *See e.g.*, *Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993) ("[T]he district court could properly require [party] to seek discovery from its party opponent before burdening the nonparty . . . ."); *O'Hanlon*, 460 F. Supp. 2d at 896 (failure of requesting party to first seek information from parties to the litigation contributed to court's finding that request imposed an undue burden); *Moon*, 232 F.R.D. at 638 (requiring non-party to produce documents without attempting to obtain them from party to the litigation first created an undue burden on non-party).

In this particular case—where Plaintiffs have requested communications *between* a party and a non-party—directing a request to the non-party needlessly complicates the discovery process. Requiring the Auto-ISAC to disclose its communications with FCA unnecessarily burdens a non-party when the relevant information (if any) could be obtained with equal or

---

[5] The fact that FCA has not challenged Plaintiffs' subpoena, Opp. at 3, 6, 14, is appropriate. "When a subpoena is directed to a nonparty, any motion to quash or modify the subpoena generally must be brought by the nonparty. In particular, a party to the action does not have standing to assert any rights of the nonparty as a basis for a motion to quash or modify a subpoena." 9 James Wm. Moore et al., Moore's Federal Practice § 45.50 (3d ed. 2015).

greater ease from an actual party to the Underlying Action.  Moreover, as Plaintiffs admit, the FCA communications can be and have been requested from FCA.  *See* Mot. at 11-12, App'x. P. This duplicative request therefore imposes an undue burden on a non-party to produce communications that can easily be discovered from a party to the litigation.

**B.   The Subpoena Engages In An Impermissible Fishing Expedition**

Rule 45 subpoenas may not be employed to harass non-parties with requests that are untethered to specific claims or that are excessively overbroad.  "Discovery . . . is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support."  *United States v. 2121 Celeste Rd. SW, Albuquerque, N.M.*, 307 F.R.D. 572, 582 (D.N.M. 2015) (citation omitted); *see also Cuomo v. Clearing House Ass'n, L.L.C.*, 557 U.S. 519, 531 (2009) ("Judges are trusted to prevent 'fishing expeditions' . . . .").  "[D]iscovery should be tailored to the issues involved in the particular case."  *Hardrick*, 96 F.R.D. at 618.  This Circuit has determined that a district court may refuse to compel discovery when a request "would amount to nothing more than a fishing expedition."  *Bastin v. Fed. Nat'l Mortg. Ass'n*, 104 F.3d 1392, 1396 (D.C. Cir. 1997) (denying request for discovery when request was supported by nothing more than "rank speculation").

Here, Plaintiffs' requests as initially written and even as amended appear designed less to address specific legal claims arising in 2015, and more to access the Auto-ISAC's confidential information regarding the cybersecurity of the automobiles of its member organizations.  For example, Plaintiffs claim that the requested documents "are potentially crucial pieces of the puzzle in the Underlying Action regarding the state of cybersecurity in the automotive industry." Opp. at 10. However, as explained above, documents pertaining to the general state of cybersecurity in automobiles will not and could not be relevant to Plaintiffs' claims about

cybersecurity in FCA's automobiles prior to the Auto-ISAC's foundation.  Plaintiffs allege specific defects in specific vehicles.  It is not the role of discovery to provide for unbridled access to the data of third parties.  *See Andrades*, 286 F.R.D. at 66.[6]

## C.  The Subpoena Improperly Requests Confidential Information

Courts may quash a subpoena that would require "disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d). Communications from FCA would almost by default contain proprietary or trade secret information considering the nature of its relationship with the Auto-ISAC.  The Auto-ISAC was founded to share confidential information about cybersecurity threats, vulnerabilities, defenses, and research.  The Court will only require the production of such confidential information if the requesting party "shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship" Fed. R. Civ. P. 45(d).

Not only have Plaintiffs failed to make this showing, but disclosure of the information they request could be affirmatively harmful.  Plaintiffs have neither demonstrated a substantial need for, nor adequately explained the relevance of, communications between the Auto-ISAC and FCA to the Underlying Action.  Of greater moment, is the harm that could come from such forced disclosure of confidential information.  It is not merely "inconvenien[t]" for the Auto-ISAC to produce confidential communications from one of its members. *Westinghouse Elec. Corp. v. City of Burlington*, 351 F.2d 762, 767 (D.C. Cir. 1965).  The Auto-ISAC exists to enhance cybersecurity coordination and communication among industry leaders.  Confidentiality is essential to its effective performance—both to encourage participation and to ensure that

---

[6] *See also McGee v. Hayes*, 43 F. App'x 214, 217 (10th Cir. 2002) ("The district court was not required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim."); *Hardrick*, 96 F.R.D. at 618 ("[C]ourts have become concerned about 'fishing expeditions', [sic] discovery abuse and inordinate expense involved in overbroad and far-ranging discovery requests.").

sensitive information is not disclosed to others who might use it for malicious purposes.  The best way to protect against a dangerous unauthorized disclosure of cybersecurity information that could cause harm to systems or individuals is not to disclose that information in the first place. Once information has been released in any form, the likelihood of further inappropriate dissemination or misuse inevitably rises.  *See Weakley v. Redline Recovery Servs., LLC*, No. 09cv1423 BEN (WMC), 2011 WL 1522413, at *2 (S.D. Cal. Apr. 20, 2011).[7]  Forcing the Auto-ISAC to produce such sensitive information without any showing of need from Plaintiffs would unnecessarily expose confidential information and jeopardize the mission of the Auto-ISAC.

### D. Mandating Disclosure Could Chill Information Sharing That Is Vital To National Security

Enforcing this Subpoena threatens more than the viability of the Auto-ISAC; it has the potential to directly impact consumer safety and even national security.  The Auto-ISAC, like similar information sharing and analysis centers, exists to help marshal resources and knowledge to combat cyber threats.  The threats to networked systems, such as connected cars, emanating from criminal enterprises and state-sponsored actors are significant and likely to grow in years to come.  The Auto-ISAC is on the frontline of this fight and this Subpoena threatens to undermine its vital and significant work.

*First*, the "Best Practices" request asks for the work product and deliberative process

---

[7] It is for this reason that the protective order in the Underlying Action is insufficient to guarantee the security and confidentiality of the Auto-ISAC's information.  As discussed below, the forced disclosure of any information by the Auto-ISAC is likely to chill its members willingness to actively participate in sharing cyber threat information, and their willingness to be members at all.  "[I]f limiting discovery is impossible or creates a risk of disclosure of the protected materials, blanket protection is appropriate."  *In re Fosamax Prods. Liab. Litig.*, No. 1:06-MD-1789JFKJCF, 2009 WL 2395899, at *5 (S.D.N.Y. Aug. 4, 2009); *see also Solarex Corp. v. Arco Solar, Inc.*, 121 F.R.D. 163, 180 (E.D.N.Y. 1988), *subsequently aff'd*, 870 F.2d 642 (Fed. Cir. 1989) (concluding that even "a carefully drawn protective order" would not eliminate the risk of disclosure "or at least the perception . . . that such a risk exists").

information of a non-profit, non-party, engaged in public safety research that does not directly bear on the claims at issue.  Granting such a request has the serious potential to chill valuable and necessary scientific and research activity.  The Court should carefully consider this factor in assessing whether the Subpoena imposes an undue burden, not just to this particular entity, but to society as a whole.  *See In re Fosamax Prods. Liab. Litig.*, No. 1:06-MD-1789JFKJCF, 2009 WL 2395899, at *3 (S.D.N.Y. Aug. 4, 2009).  "There is a serious danger that permitting discovery in these situations 'inevitably tend[s] to check the ardor and fearlessness of scholars, qualities at once so fragile and so indispensable for fruitful academic labor.'"  *Id.* at *4 (quoting *Sweezy v. New Hampshire*, 354 U.S. 234, 262 (1957)).  Such concerns are magnified when the research directly concerns matters of public safety and national security.  *See* App'x A at 2 (describing the Auto-ISAC as engaged in "vitally important research and collaboration essential to identifying potential risks" in vehicle cybersecurity).  Moreover, courts have found that the interest in encouraging speech within research institutions warrants "protecting from discovery the analyses, opinions and conclusions drawn by researchers from their data."  *Plough Inc. v. Nat'l Acad. of Scis.*, 530 A.2d 1152, 1157 (D.C. 1987).[8]  In its effort to gather and analyze cybersecurity standards and practices in the automotive industry in the interest of public good, the Auto-ISAC ought to be regarded as a valuable research organization.

The threat of cyber attacks against the digital systems employed in modern automobiles is a serious one, and institutional actors should be encouraged to engage with each other and share research and new developments in a collaborative space.  Requiring disclosure from a research organization meant to facilitate the open sharing of information relating to cybersecurity would reduce the incentives to contribute and frustrate the entire purpose of the Auto-ISAC.

---

[8] *See also In re Fosamax Prods. Liab. Litig.*, 2009 WL 2395899, at *4 ("Compelling testimony from a third-party researcher risks chilling participation in beneficial public research.").

*Second*, the request for FCA communications threatens to undermine years of efforts to convince business entities of the value in joining an information sharing organization. These organizations are built on trust among members and with the organization they have established to share information. The currency of that trust is confidentiality, and serious negative consequences flow from any action that breaches confidentiality. If members know that the sensitive threat information they share with an ISAC is subject to discovery, not only will active participation decrease, but the very future of ISACs will be placed in jeopardy. If entities cannot share with a promise of real confidentiality, they will not join ISACs in the first place. *See* App'x A (NHTSA Letter); App'x B (NH-ISAC Letter).

## IV.      This Case Presents No "Exceptional Circumstances" Justifying Venue Transfer

Finally, Plaintiff attempts to remove this dispute from its rightful place in the District of Columbia, where non-party Auto-ISAC is headquartered, to the Southern District of Illinois, with which the Auto-ISAC has no connection. Rule 45(f) states that the court where compliance is required (D.C.) *may* transfer the motion to the court that issued the subpoena (Southern District of Illinois) if "exceptional circumstances" exist. The burden is on the party requesting transfer to demonstrate that such circumstances exist. Fed. R. Civ. P. 45(f). While the Rules provide no definition for "exceptional circumstances," the Advisory Committee Notes state that, "[t]he prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions." Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendment. For that reason, "transfer is appropriate only if the interests in avoiding disruption of the issuing court's management of the underlying litigation outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion." *Id.*; *see also Judicial Watch, Inc. v. Valle*

*Del Sol, Inc.*, 307 F.R.D. 30, 34 (D.D.C. 2014).

This case satisfies none of the factors that courts usually consider when deciding this question, which include "the complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation." *Judicial Watch*, 307 F.R.D. at 33. The Underlying Action lacks any complexities that would impair this Court's ability to rule on the instant motion. *Compare, e.g.*, *Fed. Deposit Ins. Corp. v. Galan-Alvarez*, No. 1:15-mc-00752 (CRC), 2015 WL 5602342, at *1 (D.D.C. Sept. 4, 2015) (denying transfer "[b]ecause the legal and factual issues presented by the motion to quash are not particularly complex and do not require deep familiarity with the underlying lawsuit, and because this Court can resolve the dispute as efficiently as the issuing court"), *and CMB Expert, LLC v. Atteberry*, No. 3:14-mc-51-B-BN, 2014 WL 2197840, at *2 (N.D. Tex. May 27, 2014) (denying transfer even where "the underlying action is 'fairly complex'"), *with Fed. Home Loan Mortg. Corp. v. Deloitte & Touche LLP*, 309 F.R.D. 41, 43 (D.D.C. 2015) (granting transfer because resolution of the motion to compel "requires nuanced legal analysis based on a full understanding of the Underlying Action. It is not a mere relevancy determination.").

The Southern District of Illinois' familiarity with the issues alone is not enough of a reason to transfer this dispute and severely burden the Auto-ISAC with distant litigation.[9] *See, e.g.*, *Woods ex rel. U.S. v. SouthernCare, Inc.*, 303 F.R.D. 405, 409 (N.D. Ala. 2014) (explaining

_____

[9] *See Millennium TGA*, 286 F.R.D. at 11 ("[I]t is also improper to subject non-parties to the undue inconvenience of litigating in a distant forum."); *Platinum Props. Inv'r Network, Inc. v. AMCO Ins. Co.*, No. 15-mc-213-JAR-TJJ, 2015 WL 5883819, at *6 (D. Kan. Oct. 8, 2015) ("In this case, the subpoenaed Kansas lawyers have shown that transferring the motions to California will place additional and unnecessary burdens upon them."); *Garden City Employees' Ret. Sys. v. Psychiatric Sols., Inc.*, No. 13-238, 2014 WL 272088, at *3 (E.D. Pa. Jan. 24, 2014) ("Because both UHS and its counsel are located in this judicial district, it would be more burdensome for UHS to litigate the instant motion in Tennessee than in this district.").

that exceptional "circumstances do not exist simply because the issuing court is in a better position to decide the motion or because that court may resolve similar issues in the future"). Moreover, this motion will not interfere with the discovery schedule established by the issuing court, and the fact that the issuing court has resolved unrelated discovery disputes likewise provides no grounds for transfer.  *Id.* at 408 ("The risk of overlapping future rulings, in the name of judicial economy or otherwise, does not constitute an exceptional circumstance.").  There is no stated reason why the District of Columbia is incapable of resolving this standard discovery dispute.

The Court should deny Plaintiffs' request to transfer the motion.

## **CONCLUSION**

For the foregoing reasons, the Auto-ISAC respectfully requests that this Court quash the Subpoena and reject venue transfer.

Respectfully submitted,


        /s/ Marcus A. Christian
Marcus A. Christian (D.C. Bar No. 1021947)
MAYER BROWN LLP
1999 K Street, NW
Washington, DC  20006-1101
Phone: (202) 263-3000
Fax: (202) 263-3300

*Attorneys for Auto-ISAC, Inc.*

## CERTIFICATE OF SERVICE

I, Marcus A. Christian, counsel for movant Auto-ISAC, Inc., and a member of the Bar of this Court, certify that on this 21st day of October, 2016, I caused a copy of the foregoing document to be filed using the Court's CM/ECF system, which will send notice of the same to all counsel of record, and further served via overnight mail on the following:

Stephen R. Wigginton
Christopher D. Baucom
Lucas Pendry
Armstrong Teasdale LLP
7700 Forsyth Blvd.
St. Louis, MO 61305

IJay Palansky
Armstrong Teasdale LLP
4643 S. Ulster Street, Suite 800
Denver, CO 80237

Emily Buckley
Armstrong Teasdale LLP
3115 Wyandot Street
Denver, CO 80211

Christopher F. Cueto
Michael J. Gras
Law Office of Christopher Cueto , LTD
7110 West Main Street
Belleville, IL 62223

Lloyd M. Cueto
Law Office of Lloyd M. Cueto, P.C.
7110 West Main Street
Belleville, IL 62223

*Counsel for Plaintiffs Brian Flynn, George Brown and Kelly Brown*

Charles Steese
Stephen R. Wigginton
Christopher D. Baucom
Armstrong Teasdale LLP
7700 Forsyth Blvd.
St. Louis, MO 61305
*Counsel for Plaintiff Michael Keith*

Kathy A. Wisniewski
Stephen A. D'Aunoy
John W. Rogers
Scott H. Morgan
Sharon B. Rosenberg
Thompson Coburn
One US Bank Plaza, 26th Floor
St. Louis, MO 63101-2183

*Counsel for Defendant FCA US LLC*

Andrew Blair Fromm
John R. Trentacosta
Vanessa L. Miller
Foley & Lardner LLP
500 Woodward Ave., Suite 2700
Detroit, MI 48226-3489

Elizabeth Mazzocco
William J. McKenna , Jr.
Foley & Lardner, LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654

Michael D. Leffel
Foley & Lardner
150 East Gilman Street
Post Office Box 1497
Madison, WI 53703-1481

*Counsel for Defendant Harman International Industries, Inc.*

/s/ Marcus A. Christian
Marcus A. Christian