**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                    )
BRIAN FLYNN, *et al.*,              )
                                    )
              Plaintiffs,           )
                                    )
         v.                         )  Case No. 16-mc-2034 (EGS)
                                    )
FCA US LLC, and HARMAN              )
INTERNATIONAL INDUSTRIES, INC.,     )
                                    )
              Defendants,           )
                                    )
AUTO-ISAC, INC.,                    )
                                    )
              Movant.               )
_____)

### MEMORANDUM OPINION

Pending before the Court is third party Auto-ISAC, Inc.'s ("Auto-ISAC")[1] motion to quash a subpoena served on it by Brian Flynn, George Brown, Kelly Brown, and Michael Keith, who are plaintiffs in an underlying action in the United States District Court for the Southern District of Illinois against defendants FCA US LLC ("FCA") and Harman International Industries, Inc. ("Harman"). Plaintiffs request that the Court deny Auto-ISAC's motion or, in the alternative, request that the Court transfer the motion to the Southern District of Illinois for determination. Upon consideration of the motion, the response and reply thereto, the applicable law, and the entire record,

_____

[1] "ISAC" is an abbreviation used across various industries for "Information Sharing and Analysis Center."

Auto-ISAC's motion to quash shall be **TRANSFERRED** to the Southern District of Illinois.

## I.   Background

Plaintiffs filed a class action complaint against FCA and Harman in the Southern District of Illinois on August 4, 2015. Auto-ISAC's Mem. in Supp. of Mot. to Quash Third-Party Subpoena Duces Tecum ("Auto-ISAC's Mem. Supp."), ECF No. 1-1 at 2-3; Pls.' Opp. to Auto-ISAC's Mot. to Quash Third-Party Subpoena Duces Tecum ("Pls.' Opp."), ECF No. 10 at 5.[2] Plaintiffs' claims are grounded in allegations that FCA vehicles equipped with Harman-manufactured "infotainment systems"——central console units that control "phone, navigation, entertainment, and various other functions in a vehicle"——"suffer from various defects that make them vulnerable to 'hacking' and remote access by anyone." Pls.' Opp. at 4. Following the September 2016 resolution of motions to dismiss on jurisdictional and pleading grounds filed by FCA and Harman, plaintiffs' surviving claims in the underlying action include breach of warranty under the Magnuson-Moss Warranty Act, fraudulent concealment, unjust enrichment, and claims arising under state consumer protection laws. *Id.* at 6; Auto-ISAC's Reply in Supp. of Mot. to Quash Third-Party Subpoena ("Auto-ISAC's Reply"), ECF No. 13 at 11.

---

[2] Plaintiff Keith was added as an additional plaintiff in December 2015 in the amended complaint. Pls.' Opp. at 5-6.

Auto-ISAC is a non-profit organization that was incorporated on August 17, 2015 and is headquartered in Washington, D.C. Auto-ISAC's Mem. Supp. at 3; Auto-ISAC's Reply at 19. The automotive industry created the Auto-ISAC "to play an important role in promoting cybersecurity throughout the automotive industry." Auto-ISAC's Mem. Supp. at 5. In August 2016, plaintiffs served a subpoena seeking certain documents and communications on Auto-ISAC's registered agent in Delaware. *Id.* at 6. After back-and-forth between plaintiffs' counsel and Auto-ISAC's counsel, the parties agreed that the subpoena would be served on Auto-ISAC's counsel in Washington, D.C. and that it would be limited to (1) "Documents reviewed, considered, published or otherwise related to Auto-ISAC's creation of the automotive cybersecurity 'Best Practices' which was published in the summer of 2016" and (2) "Communications with FCA from June, 2010 to the present." *Id.* at 6-7; App. L, ECF No. 3. Auto-ISAC subsequently moved this Court to quash the subpoena, arguing that the subpoena seeks irrelevant information, that Auto-ISAC's compliance with the subpoena would subject it to an undue burden, and that the subpoena calls for the improper disclosure of its confidential and proprietary information. *See generally* Auto-ISAC's Mot. to Quash Third-Party Subpoena, ECF No. 1; Auto-ISAC's Mem. Supp. Plaintiffs, in turn, request that this Court deny the motion to quash or, in the alternative, request that

this Court transfer the motion to quash to the Southern District

of Illinois. *See generally* Pls.' Opp. Auto-ISAC's motion is now

ripe and ready for this Court's adjudication.

## II.  Analysis

Federal Rule of Civil Procedure 45(f) states in relevant

part:

> When the court where compliance [with a
> subpoena] is required did not issue the
> subpoena, it may transfer a motion under this
> rule to the issuing court if the person
> subject to the subpoena consents or if the
> court finds exceptional circumstances.

Fed. R. Civ. P. 45(f). According to the relevant Advisory

Committee Note to the 2013 amendments to Rule 45, when a court

assesses whether "exceptional circumstances" exist to permit

transfer, the "prime concern should be avoiding burdens on local

nonparties subject to subpoenas, and it should not be assumed

that the issuing court is in a superior position to resolve

subpoena-related motions." Fed. R. Civ. P. 45(f) advisory

committee's note. However, "transfer may be warranted in order

to avoid disrupting the issuing court's management of the

underlying litigation . . . if such interests outweigh the

interests of the nonparty served with the subpoena in obtaining

local resolution of the motion." *Id.* To carry out this balancing

test, courts in this Circuit have considered "the complexity,

procedural posture, duration of pendency, and the nature of the

issues pending before, or already resolved by, the issuing court in the underlying litigation," *Judicial Watch, Inc. v. Valle Del Sol, Inc.*, 307 F.R.D. 30, 34 (D.D.C. 2014), and have considered the goals of judicial economy and the avoidance of inconsistent results. *Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 46 (D.D.C. 2014).

Plaintiffs argue that this Court can transfer Auto-ISAC's motion to quash because the issuing court has already dealt with some discovery issues, is more familiar with the underlying facts and issues, and has set the close of fact discovery for December 16, 2016. Pls.' Opp. at 16. Auto-ISAC counters that the underlying action "lacks any complexities that would impair this Court's ability to rule on the instant motion"; that the issuing court's mere familiarity with the underlying issues is "not enough" to warrant transfer; that it would be "severely burden[ed]" by litigation in the Southern District of Illinois; and that the issuing court's involvement in "unrelated discovery disputes" provides no basis for transfer. Auto-ISAC's Reply at 20-21.

Although Auto-ISAC severely overstates its argument when it asserts that "none" of the relevant factors weigh in favor of transferring its motion to quash, *see id.* at 20, it is correct to suggest that *certain* of the usual factors weigh against transferring. First, the underlying suit has only been pending

for about 15 months, which is less than the duration of pendency
that has weighed in favor of transfer in other cases. *See, e.g.*,
*Duck v. SEC*, No. 16-mc-697, 2016 WL 1573444, at *3 (D.D.C. Apr.
19, 2016) (over four years); *In re UBS Fin. Servs., Inc. of P.R.
Sec. Litig.*, 113 F. Supp. 3d 286, 288 (D.D.C. 2015)
(approximately three and a half years); *Judicial Watch*, 307
F.R.D. at 35 (four years). Second, although this Court is not of
the opinion that the underlying litigation is simple or
straightforward, its complexity appears to be of a lesser
magnitude than that which has weighed in favor of transfer in
other cases. *See, e.g.*, *In re UBS Fin. Servs.*, 113 F. Supp. 3d
at 288 ("complex securities issues"); *XY, LLC v. Trans Ova
Genetics, L.C.*, 307 F.R.D. 10, 11 (D.D.C. 2014) ("complex patent
infringement suit"). And, third, plaintiffs direct this Court to
a limited number of discovery disputes in the underlying action,
*see, e.g.*, Pls.' Opp., ECF No. 10-2, Ex. 2, which is a far cry
from the "innumerable discovery disputes" that have weighed in
favor of transfer in the past. *See Judicial Watch*, 307 F.R.D. at
35.

On balance, however, consideration of a host of additional
circumstances tips the balance in favor of finding "exceptional
circumstances" warranting transfer of Auto-ISAC's motion to
quash to the Southern District of Illinois. First, one of Auto-
ISAC's principal arguments in support of its motion to quash is

that the information that plaintiffs seek via their subpoena is irrelevant to the underlying action. *See* Auto-ISAC's Mem. Supp. at 7-10; Auto-ISAC's Reply at 5-12. As other courts have noted, "'the relevance argument advanced emphasizes the need for the court where the underlying matter lies to decide the matter.'" *XY*, 307 F.R.D. at 12 (quoting *Patriot Nat'l Ins. Grp. v. Oriska Ins. Co.*, 973 F. Supp. 2d 173, 176 (N.D.N.Y. 2013)); *see also FDIC v. Galan-Alvarez*, No. 15-mc-752, 2015 WL 5602342, at *3 (D.D.C. Sept. 4, 2015) (explaining that making a relevance determination can require a court "to delve into the intricacies of the underlying dispute"). Because the Judge and the Magistrate Judge involved in the underlying case are knee-deep in the nuances of the underlying litigation, they are in a much better position than this Court to evaluate relevance. *See Flanagan v. Wyndham Int'l Inc.*, 231 F.R.D. 98, 103 (D.D.C. 2005). Accordingly, the centrality of the relevance issue to resolving the motion to quash strongly weighs in favor of transferring the motion to the issuing court.

Second, the issuing court is also much better positioned to deal with Auto-ISAC's non-relevance arguments in favor of its motion to quash. Auto-ISAC argues that at least a portion of the information requested by plaintiffs' subpoena is duplicative of information plaintiffs have already sought from defendant FCA. Auto-ISAC's Mem. Supp. at 10-12. Because the issuing court is

already immersed in the discovery taking place between the
parties and has resolved at least one discovery dispute between
them, *see* Pls.' Opp., ECF No. 10-2, Ex. 2, it is better
positioned to scrutinize this duplication argument.[3] Similarly,
the issuing court is much better positioned to scrutinize Auto-
ISAC's argument that the subpoena should be quashed on grounds
that disclosure of its confidential information would chill the
important sharing of cybersecurity information that has recently
occurred in the automotive industry. *See* Auto-ISAC's Mem. Supp.
at 12-14. Part of this argument is that the protective order in
place in the underlying action is "insufficient" because, Auto-
ISAC asserts, "[o]nce information has been released in any form,
the likelihood of further inappropriate dissemination or misuse
inevitably rises." Auto-ISAC's Reply at 17. Because the issuing
court has been able to intimately observe the parties and
counsel involved in the underlying litigation over the course of
the past 15 months, it is much better positioned than this Court
to determine whether any of Auto-ISAC's fears about the
inappropriate dissemination of confidential information in
violation of a protective order have any merit. Thus contrary to

---

[3] The fact that the issuing court's immersion in discovery in the
underlying litigation makes it better positioned to scrutinize
one of Auto-ISAC's arguments in favor of its motion to quash
underscores the inaccuracy of Auto-ISAC's characterization of
the discovery in the underlying case as "unrelated" to its
motion to quash. *See* Auto-ISAC's Reply at 21.

Auto-ISAC's assertion otherwise, *see id.* at 20-21, the issuing court's familiarity with both the issues and the parties in the underlying action strongly counsels in favor of transferring its motion to quash to that court.

Additionally, contrary to Auto-ISAC's assertion that this Court's resolution of its motion "will not interfere with the discovery schedule established by the issuing court," *id.* at 21, there is a real risk that refusing to transfer could disrupt the very well-managed discovery in the underlying litigation. Fact discovery is set to close in mid-December, Pls.' Opp. at 16, and the issuing court has put in place a streamlined procedure for resolving discovery disputes "[i]n the interest of reducing delay and expense." Pls.' Opp., ECF No. 10-6, Ex. 6. The time-sensitive nature of discovery and the specific discovery procedures implemented in the underlying litigation weigh in favor of transferring the instant motion to quash. *See, e.g.*, *Duck*, 2016 WL 1573444, at *4 ("[T]ransfer is appropriate where transfer would avoid interference with a time-sensitive discovery schedule issued in the underlying action.").

Finally—and perhaps most importantly given the guidance in the relevant Advisory Committee Note that the "prime concern" when considering whether to transfer a motion to quash is avoiding burdens on local nonparties subject to subpoenas, Fed. R. Civ. P. 45(f) advisory committee's note—no undue burden

would be imposed upon Auto-ISAC if its motion were transferred
to the Southern District of Illinois for determination. Auto-
ISAC asserts that it would be "severely burden[ed]" if it had to
engage in "distant litigation" in the Southern District of
Illinois. Auto-ISAC's Reply at 20. It cites a string of cases
where courts refused to transfer due to the burden of litigating
in distant forums. *Id.* at 20 n.9. But these cases are inapposite
because Auto-ISAC does not explain how it would be burdened by
litigating in Illinois. Although Auto-ISAC is headquartered in
Washington, D.C., *id.* at 19, it admits that its interests and
reach are far from local in nature, as it describes itself
prominently on its Internet homepage as an organization that
endeavors "'to enhance cyber security awareness and coordination
across the global automotive industry.'" *Id.* at 11 (quoting
https://www.automotiveisac.com/index.php). A corporation aimed
at achieving coordination across a global industry that is
represented by sophisticated counsel is not burdened by
litigating in a forum halfway across the country. *See, e.g.*,
*Judicial Watch*, 307 F.R.D. at 35 ("Given the Petitioner's
national reach and familiarity with litigation in courts outside
this jurisdiction, the general interest in protecting local
nonparties by requiring local resolution of subpoena-related
disputes is significantly reduced."). Additionally, the order
regarding discovery disputes implemented by the issuing court

specifically contemplates resolving such disputes via phone, fax, and email. Pls.' Opp., ECF No. 10-6, Ex. 6. There is thus a strong possibility that Auto-ISAC's counsel will not even need to leave Washington, D.C. to litigate the motion. Accordingly, because transferring Auto-ISAC's motion to quash would avoid disrupting the underlying litigation, the issuing court is much better positioned than this Court to resolve the motion to quash, and the burden imposed on Auto-ISAC from a transfer would be minimal, if any, the instant motion will be transferred to the Southern District of Illinois for determination.[4]

## III. Conclusion

For the reasons stated above, Auto-ISAC's motion to quash shall be **TRANSFERRED** to the United States District Court for the Southern District of Illinois, where the underlying action is pending. An appropriate Order accompanies this Memorandum Opinion.

   **SO ORDERED.**

**Signed:     Emmet G. Sullivan**
             **United States District Judge**
             **November 2, 2016**

---

[4] Pursuant to the suggestion in the relevant Advisory Committee Note, this Court has consulted with the Magistrate Judge handling discovery in the underlying litigation, and he has agreed to handle the motion to quash upon transfer. *See* Fed. R. Civ. P. 45(f) advisory committee's note ("Judges in compliance districts may find it helpful to consult with the judge in the issuing court presiding over the underlying case while addressing subpoena-related motions.").